Alois C. Mazub, J.
The defendants herein were charged by a prosecutor’s information filed at the direction of the June, 1973, Grand Jury of Erie County. Pursuant to said information they were charged with resisting arrest (Penal Law, §§ 205.30, 20.00); obstructing governmental administration (Penal Law, §§ 195.05, 20.00); disorderly conduct (Penal Law, § 240.20, subd. 3; § 20.00) and assault, third degree (Penal Law, §§ 120.00, 20.00).
The defendants, for reasons of their own, were not represented by counsel, although they were given ample opportunity to be represented by counsel and to be provided with counsel at the expense of the people.
A jury trial was held on November 8,1973 and the defendants were convicted of resisting arrest (Penal Law, § 205.30) and obstructing governmental administration (Penal Law, § 195.05). The court however, at the end of the People’s case, dismissed the disorderly conduct and assault, third degree, charges as a matter of law, because the evidence herein was insufficient to indicate that the defendants intended or recklessly created the risk of public inconvenience, annoyance or alarm by use of abusive or obscene language or that they caused such physical injury, if any, as is contemplated by section 120.00 and section 10.00 (subd. 9) of the Penal Law. (Essentially, in regard to the alleged scuffle herein involved, the only consequence, injury or damage to the alleged victims was that “ their jackets were torn and both [their] trousers were torn ”. There was, however, evidence to the effect that one of the defendants was injured to such a degree as to require him to be taken to the *591 hospital as a result of a head wound inflicted by a blackjack. As to the alleged obscene words, they were, if used, obviously fleeting and emotional and the People’s witness admitted that he did not know which of the defendants spoke the words.)
During legal arguments heard in the absence of the jury the court did express its hesitancy and doubts as to the propriety of giving this case to the jury and charging it that it was a question of fact whether an authorized arrest existed under the circumstances herein. Nevertheless, the court did permit the jury to deliberate upon the issues presented and the jury did bring in the verdicts indicated.
Thereafter, and prior to the scheduled sentencing and with sufficient notice to the District Attorney, the defendants moved to set aside the verdict of the jury. Although other sections of the Criminal Procedure Law have been referred to by the defendants, and may also be involved, it is very clear to the court and the People that the court is being asked to set aside the verdict pursuant to CPL 330.30 (subd. 1).
Before the evidence herein is summarized it is somewhat important to note that the defendants were not tried for, nor were they ultimately charged with, any offense for which they were allegedly and initially arrested. In other words, the underlying arrest, which gave rise to the resisting arrest, and obstructing governmental administration charges (as well as the other charges and the entire confrontation) was not for an offense included in the prosecutor’s information. (Apparently this is not required upon a fair reading of Penal Law, § 205.30. It seems that the essential, in this regard, is that there be an authorized arrest under the rules of arrest and not that a defendant be indicted or tried on that for which he is arrested.)
It should also be pointed out that the prosecutor’s information, while alleging the two separate offenses of resisting arrest and obstructing governmental administration, nevertheless alleges facts which clearly indicate that the central issue herein for both charges is the validity of the arrest involved. This, of course, is obvious in regard to the resisting arrest charge. And, while generally there may be numerous official functions of public servants which could conceivably be obstructed, the facts alleged in the prosecutor’s information clearly refer only to the “ official function of arresting the defendants ”.
While the evidence herein is in parts somewhat conflicting, the court shall only summarize and consider testimony of the People’s only witness, one Officer Anthony Knapik of the Buffalo Police Department.
*592 It appears that on March 26,1973, at approximately 4:00 p.m. Patrolman Knapik and his partner Patrolman Roesch were on duty in a patrol car on Jefferson Avenue in the City of Buffalo. When they passed the intersection of Jefferson and East Utica (a bus stop and a fairly busy intersection at this time of day) Patrolman Knapik, a passenger in the police car, observed defendant Ailey distributing some literature on the northwest corner of said intersection. After they passed the intersection, Patrolman Knapik asked his partner “ to turn around to go back ” for the purpose, as subsequent testimony revealed, to ask some questions. According to Patrolman Knapik, defendant was asked to see what was being distributed. Patrolman Knapik testified that he “ wanted to ascertain the nature of what he was distributing and who was distributing them ”. (The evidence is quite clear that there was, at this time, no other expressed reason for police involvement.)
Patrolman Knapik then testified that defendant Ailey did identify himself and even presented a driver’s license as proof of identity. After this the officer testified, “ I told him that I had a duty to ascertain what he was distributing and who was distributing and if he didn’t allow me to do so, I would place him under arrest ”. At the time of this request defendant Ailey, allegedly, “ clutched the papers to his chest and said it wasn’t for fascist pigs ”.
Immediately thereupon, and without an opportunity to tell the defendant what he was being arrested for, a scuffle ensued and defendant Hamilton joined in, having crossed the street from his post at the southeast corner of the intersection. The results of this “ scuffle ” or “ fight ’’have already been described above in regard to the actual injuries or damages sustained.
The evidence herein is eminently clear, as far as the People’s version is concerned, that the police allegedly did not know the contents of the literature being passed out that day, that they received no complaints concerning the activities of the defendants and, at least as far as the arresting officers were concerned, that they did not know the defendants or their political philosophies.
The court shall, for the purpose of this motion, consider this emphasized version to be true, even though the literature being distributed had emblazoned on the front page thereof, the words “ Buffalo ” and “ Red Star ” and the symbol of a star, hammer and sickle, all in red ink and approximately 1% inches in height.
Also, the court, for the purpose of this motion, is not considering the defendants’ contention that they were selling, and *593 not simply distributing, the literature in question and that the police were offered the literature if they paid for it like anyone else. This simply was not the version of the police.
What then was the authority, purpose and reason for the arrest herein? The only possible answer can be found in the words of the arresting officer when, he said (after the defendant had identified himself and the officer admitted that he found nothing wrong with the proffered driver’s license!): “ I told him that I had a duty to ascertain what he was distributing and who was distributing and if he didn’t allow me to do so, I would place him under arrest ”.
According to the police version, a fuller disclosure of the information relative to the arrest was apparently not possible because immediately upon refusing to give the officer a copy of the literature and upon defendant Alley’s being told that he was “ under arrest ” a scuffle ensued.
Assuming there was lawful authority for an arrest, this procedure could apparently suffice because of CPL 140.15 (subd. 2). Although this section requires that a certain procedure be followed, it need not be fully complied with if the arresting officer “ encounters physical resistance, flight or other factors rendering such procedure impractical ’ ’.
Finally, however, the defendants did learn, at the time of their very first appearance in court, that the arresting officers had arrested them for and charged them with violating chapter IX (§ 24) of the Ordinances of the City of Buffalo, which provides : “ Resisting officer in discharge of duty. Any person who shall refuse to obey, or shall resist any officer or employee of the city in the discharge of his regular duty shall be subject to a fine ”.
As previously indicated, however, the above described charge, included in the originally filed accusatory instrument, was not, for reasons unknown, included in the final prosecutor’s information involved herein.
Thus, the central issue herein is whether or not there was an authorized arrest, under the circumstances herein, for refusing to obey an officer in the discharge of his regular duty. (Ordinances of City of Buffalo, ch. IX, § 24.)
As applied herein, this ordinance appears to be of the same troublesome genre as section 240.35 (subd. 6) of the Penal Law, which our State’s highest court said was unconstitutional. (People v. Berck, 32 N Y 2d 567.) The Court of Appeals there dealt with a provision of law which required a person, under certain circumstances, to identify himself or give a reasonably credible account of his conduct and purposes.
*594 In addition to invalidating the particular provision of the law because it failed to give adequate notice of the conduct to be avoided, the court also held that it placed virtually unfettered discretion in the hands of the police and undercut the constitutional requirement that arrests are lawful only upon a showing of “ probable cause ”.
Here the situation is essentially not different. The police had absolutely no probable cause whatsoever that any one of our nation’s laws was being violated. The defendants were seen doing nothing more than exercising their presumptively constitutional First Amendment rights; the police did not know the defendants or their political convictions; they claim not to have known the nature of the literature; the evidence indicated nothing suspicious or unusual at the time of the original confrontation and request; there were no citizen complaints made or being investigated.
Moreover, we have here a situation where the only defendant to whom a request was made identified himself positively and without objection by the police. Even if there were suspicious circumstances, this was all that was required by the invalidated section 240.35 (subd. 6) of the Penal Law. To require more information or more co-operation under any circumstances could well violate defendants’ Fourth, Fifth, Ninth, and Fourteenth Amendment rights or in effect compel the defendants to waive their rights thereunder by being required to obey the request made by the police.
Now let us examine this situation from a slightly different approach. We have here a demand or order that a private citizen obey a police officer “ in the discharge of his regular duty ”. Certainly it is essential, under this city ordinance, that the police officer be authorized under law to make the demand or order and that the demand or order be pursuant to his duties. It can hardly be said that a demand or order is authorized or in the discharge of police duties where a citizen is being asked to waive his constitutional rights or where the police officer essentially is attempting, to create ‘ ‘ probable cause ’ ’ for a possible arrest on some offense for which there is no probable cause.
Tes, of course, it is the duty of police officers to investigate crime and suspicious occurrences and prevent crime. The extent to which they may go is continuously being developed on a case by case basis. Police power in this regard has developed to a fairly adequate formulation in relation to issues such as the right to stop and question, essentially involved.
*595 In short, this court maintains that the alleged basis of the arrest herein (Ordinances of City of Buffalo, ch. IX, § 24) must, under the circumstances herein, be considered in relation to the power or rights of the police to stop and question.
It would seem obvious that where a police officer has no power or right to demand something, then he has no authorized duty to perform in that regard and that any order given is unauthorized where no power or right exists. Thus, the arrest for refusing to obey the officer would be unauthorized (an essential element of Penal Law, § 205.30) and, at least here, the “ official function ” (the essential element under Penal Law, § 195.05, as particularly charged herein) could not be obstructed, impaired or perverted, if there was no power or right to act. (Again, it should be noted that the “ official function ” was specifically stated in the accusatory instrument as being that of ‘ ‘ arresting the defendants ”.)
CPL 140.50 appears to be a fairly good codification of the extent of this police power or right.
The portions thereof, as relevant here, provided:
“ 1. * * * a police officer may stop a person in a public place located within the geographical area of such officer’s employment when he reasonably suspects that such person is committing, has committed or is about to commit either (a) a felony or (b) a class A misdemeanor defined in the penal law, and may demand of him his name, address and an explanation of his conduct ”.
The power and right of the police to prevent crime — and, therefore, to discharge their duties — is also somewhat outlined in CPL 140.10, which in relevant portions, provides:
“ 1. * * * a police officer may arrest a person for: (a) Any offense when he has reasonable cause to believe that such person has committed such offense in his presence * * *
“ 2. A police officer may arrest a person for a petty offense, pursuant to subdivision one, only when: (a) Such offense was committed or believed by him to have been committed within the geographical area of such officer’s employment; ”.
This portion of the law of arrest is cited, not as authority for the particular arrest made herein, but because it is very relevant to the discussion of the total situation herein.
The point here is simply this: if the police officer had reasonable cause to believe that an offense was being committed at the time of the original confrontation then he had a right — and probably a duty — to arrest. Presumably, the officer did not have a reasonable cause at the time, so he properly did not arrest. "What he did do, however, is attempt to provide himself *596 with reasonable canse and he, therefore, made certain demands, the refusal of which resulted in the arrest for the city ordinance offense. The action of the police thus creates a dilemma — perhaps for the court, the police and the defendants — and strongly suggests subterfuge.
In the instant case it was argued by the People that the police were investigating the possibility of a violation of section 330 of the General Business Law, generally requiring certain publications to have the names and addresses of the owners printed therein. (Chapter IX, § 49 of the Ordinances of the City of Buffalo also has somewhat similar provisions but concerning itself with literature tending to expose individuals or groups to hatred, contempt, ridicule or obliquy and directed against printers, publishers or distributors.)
Assuming the good faith of the arresting officers in the investigation of these possible offenses, the court hastens to emphasize that the mere existence of statutes and ordinances defining criminal offenses does not give the police the power and the right to use unrestricted means to investigate possible violations thereof or to compel a citizen’s co-operation or to invoke a separate charge as a tool of investigation or as a punishment for non-co-operation. (For the essential expression of this principle, although the facts are different, see People v. Berck, 32 N Y 2d 567, supra, at p. 574, and Davis v. Mississippi, 394 U. S. 721, 727; Malloy v. Hogan, 378 U. S. 1.)
The critical and essential fact here, as mentioned above, is that there simply was no probable cause whatsoever that any crime was being committed at the time of the original citizen-police confrontation (be it General Business Law, § 330, Ordinances of City of Buffalo, ch. IX, § 49, or any other of our Nation’s approximately million and a half other offenses).
If the demand of the arresting officer and the invocation of the city ordinance provision were ruled proper under these circumstances, then some unusual consequences and applications could be had. A police officer could, for example, after merely seeing a pack of cigarettes in someone’s shirt pocket, demand that a citizen surrender it to determine if perchance it contained marihuana; a police officer seeing someone carrying luggage in a bus terminal could request him to open it to determine if it contained contraband; seeing two people laughing while reading a newspaper, a police officer could demand inspection to determine if the paper exposed any group or individual to ridicule. For failure to obey such demands for satisfaction of unbridled curiosity, a citizen could subject himself to a fine and imprison *597 ment unless he was willing to waive a number of constitutional rights.
It is the ruling of this court that chapter IX (§ 24) of the Ordinances of the City of Buffalo is unconstitutionally applied whenever, as here, and on numerous other occasions in this city, it is applied essentially for the purpose of obtaining “ probable cause ” that an offense is being committed or to compel a citizen to surrender his fundamental rights.
In short, this ordinance may not be used as a substitute for “ probable cause ”, as a means of acquiring it, or as a tool to satisfy the unbridled curiosity of the police.
Since under the circumstances of this case, there was no authorized arrest, the convictions herein must be set aside and the defendants discharged. An authorized arrest is an indispensable element of a resisting arrest offense. (Penal Law, § 205.30; People v. Lyke, 72 Misc 2d 1046; People v. Barton, 30 A D 2d 726; People v. Stevenson, 31 N Y 2d 108.) In this case it is also an essential element of the obstructing governmental administration charge precisely because, as indicated above, the function alleged to be obstructed was limited to the “ function of arresting the defendants ”.
The court is well aware that some cases (People v. Simms, 36 A D 2d 23; People v. Santiago, 69 Misc 2d 1098) seem to say that a person may be found guilty of violating section 205.30 whether the arrest was authorized or unauthorized because of section 35.27 of the Penal Law.
This court is not controlled by the decision in Simms {supra), because the verbiage therein related to section 35.27 of the Penal Law, is clearly dicta and did not result in the reason for the decision therein. Furthermore, the arrest in Simms {supra) was, upon the facts described in the decision, clearly authorized. Actually, the court here seemed to require an authorized arrest when it said, at page 24 of the official report (36 A D 2d 23, supra): “ It is sufficient that there be proof that he engaged in some conduct with an intent of preventing the officer from effecting an authorized arrest * * * The jury was justified in finding that the arrest was authorized ”.
This court respectfully does not agree with, nor is it bound by the opinion of the learned Judge of the City Court of Port Jervis in the Santiago case (69 Misc 2d 1098, supra) if in fact the Judge ruled that the arrest therein was unauthorized.
This court has no quarrel with the legislative policy attempted to be enunciated in section 35.27 of the Penal Law, and sometimes characterized as the “ no sock ” rule.
*598 The “ no sock ” rale may very well have application, and desirably so, under the present law, to assault or harassment charges involving police complainants. However, as long as section 205.30 of the Penal Law is written as it presently is, section 35.27 of the Penal Law cannot logically have any relation to a Penal Law, section 205.30 charge. Application of this “ no sock ” legislation would result in a totally meaningless interpretation of the substantive offense with which the defendant is charged.
If the particular substantive crime with which a defendant is charged clearly requires that there be ;an authorized arrest, it does not seem appropriate or correct to invoke provisions of law which are not crimes and which deal only with defenses (justification is, after all, a defense) to change the meaning of the substantive crime.
In criminal law a defense (or justification) is after all something which is raised, and which, if believed, justifies or makes noncriminal acts which otherwise would be criminal. It can hardly be said that the concept or principles of defenses can be used to enlarge or extend a crime specifically defined by the Legislature.
As this court views section 35.27 of the Penal Law, it is nothing more than a limitation upon the invocation of the traditional self defense exemption where police officers are involved. (At common law an unauthorized arrest was considered as an assault and, therefore, a citizen could use reasonable force to defend himself.) That it is nothing more than this is strongly corroborated by the fact that it is included within the codified traditional self defense provisions (Penal Law, art. 30 — Defenses Involving Lack of Criminal Responsibility).
Thus treated by the Legislature, and as long as section 205.30 of the Penal Law is the substantive crime with which the defendant is charged and as long as this substantive crime is as presently worded, section 35.27 of the Penal Law cannot be said to increase or extend the criminal action expressedly and specifically proscribed.
The motion to set aside the verdict of the jury is granted and the defendants discharged.