Harold H. Hymes, J.
The defendant is 17 years of age, with no prior record or arrest, and is therefore held to be a person eligible to be considered a youthful offender if he were convicted. The trial was therefore held before a single-Judge court, pursuant to CPL 340.40 (subd 7).
The defendant was charged with three offenses: disorderly conduct, in violation of subdivisions 1, 3, and 6 of section 240.20 of the Penal Law (a violation); assault in the third degree, in violation of subdivision 1 of section 120.00 of the Penal Law (a class A misdemeanor); and resisting arrest, in violation of section 205.30 of the Penal Law (a class A misdemeanor).
The complainant is a police officer, a member of the Utica Police Department. At the time of the occurrence of the alleged offenses, he also was being employed as a private security guard by Burger King, a fast food restaurant. The restaurant is located within two blocks of the high school and many of the noonday patrons are high school students. Be *594 cause these students occupied the restaurant booths for long periods of time, and sometimes without making a purchase, the management posted a sign on the wall behind the counter which stated that all persons under 18 years of age must make a food purchase of at least 50 cents in order to use the dining area, and that such food must be consumed within 20 minutes.
The complainant had been hired as security guard about two months before this incident occurred, and worked between the hours of 11:30 a.m. and 1:30 p.m. His duties consisted of preventing loitering around the exterior of the premises, checking to see that no one loitered in the rest rooms, and to order out of the booths persons under the age of 18 who had occupied said booths for a time of 20 minutes or more. The manager stated that his instructions to the security officer were that he was to ask such persons to leave and, if they failed to do so after two or three requests, he was to ■ place them under arrest.
On October 20, 1975, the defendant, a junior at Utica Free Academy, left the school at about 12:45 p.m. He started to walk home, which was in an easterly direction away from the restaurant and school. A block or two from the school, he met a girl who asked him to have lunch at Burger King. When he said that he had no money, she offered to pay for the lunch. So they walked to Burger King, which is in a general direction back towards the school. They entered the restaurant and went to the counter and ordered their food, the time of which the defendant put at about 1:05 p.m. The complainant says that he saw the defendant, and did not see the girl, enter the restaurant between 1:00 and 1:20 p.m. Defendant says that he sat in a booth with his friend and started to eat the food at about 1:09 p.m. Defendant states that about 10 minutes after he had been seated, the complainant came up to the booth and told him that he had to leave. When he asked why, he was informed that he had been there two hours. The complainant puts the time of asking him to leave at about 1:35 p.m. The defendant also stated that he and his friend had not finished their food, but that he got up with a glass of coke in his hand and started to walk down the aisle, following his friend. He states that the officer asked him to leave only once.
The officer states that he asked the defendant to leave three times. Two disinterested witnesses, who were in a booth nearby, said that they sat down in their booth at about the *595 same time as the defendant, and at that time he was just opening the wrapper to start eating. They also stated that when the officer came over, they had not been in their booth more than 5 or 10 minutes.
The officer also stated that each time he asked the defendant to leave, the defendant just looked at him and smiled and that at said times neither the defendant nor his friend was eating. He informed them of the 20-minute-limit rule. He said that each time he came back, the defendant only smiled at him but at last, the defendant did get up with his companion and prepared to leave. The officer said that when the defendant left the booth, he nudged the officer’s shoulder, at which time the officer said, "You are under arrest for disorderly conduct”, and that the defendant answered, "No, man, I’m not under arrest”. The officer further states that he put his hands on the defendant’s shoulders, grabbed him, and that the defendant struggled with him and they fell to the floor.
The version given by the defendant and the two women who appeared as witnesses, was somewhat different about this part of the incident. They said that the defendant left the booth and was walking down the aisle, and that the officer followed the defendant down the aisle, and that as the defendant approached the e3fit, the officer gave him a shove in the back. The defendant states that he turned and said to the officer, "Please don’t push me”, at which time the officer said, "Why? Are you going to get hurt?” The defendant said, "No”, at which time the officer grabbed him by his shirt and collar and started to pull him towards the rear of the restaurant and towards the men’s room. The defendant struggled to get away from the officer and to prevent himself being dragged into the men’s room. During the course of the struggle, they both fell into the booth, with the officer on top. During the struggle, the defendant emerged on top of the officer, with his head being held by the officer and the defendant saying, "Let me go, I can’t breathe. I have asthma”. The officer called someone to get the manager, and the manager came from the rear of the restaurant. The manager pulled the defendant off the officer and the defendant was thrown to the floor. He got up and tried to leave again and he was again held and thrown to the floor, during which time he was being advised to be quiet and calm down. The officer says that he put handcuffs on the defendant at this time and later took them off when the manager asked him to do so. None of the other witnesses, *596 including the manager, can recall any handcuffs being placed on the defendant in the restaurant. However, the defendant says that he was cuffed when other policemen came, and the complainant borrowed a set of handcuffs from his fellow officers, which he put on the defendant outside the restaurant.
At the time of this incident, the officer said that he was wearing blue pants and his officer’s blue shirt with police insignia on the collar. His badge was on his shirt but was covered by a vest. He said he was also wearing his gun in a holster, although the manager stated that he asked his guards not to wear guns in the restaurant.
The officer states that when the defendant emerged from the booth and nudged him, he announced himself as a police officer and told him that he was under arrest for disorderly conduct. The defendant denies that he knew the complainant was a police officer at any time until he was being pushed towards the men’s room, and that he was not informed that he was under arrest until he was on the floor with the complainant’s hand around his throat and knee on his chest. The witnesses also stated that at that time the officer said, "You’re in plenty of trouble. I’ve got plenty of charges against you”.
The defendant was taken to the Utica Police Station, where he was held for more than two hours, during which time he was booked, and bail was posted for his appearance in City Court.
Is the defendant, under the aforesaid state of facts, guilty of any of the offenses with which he is charged?
He is charged with violating subdivisions 1, 3 and 6 of section 240.20 (disorderly conduct). Under subdivision 1 of that section, the defendant must have engaged "in fighting or in violent, tumultuous or threatening behavior * * * with intent to cause public inconvenience, annoyance or alarm”. It is quite obvious that none of the tumultuous behavior occurred until after the officer attempted to place the defendant under arrest. Therefore, this charge is not sustained by the evidence.
Subdivision 3 requires that the defendant must have used "abusive or obscene language, or [made] obscene [gestures]” in a public place. There is nothing in the record to support this charge.
Subdivision 6 charges him with congregating "with other *597 persons in a public place and [refusing] to comply with a lawful order of the police to disperse”. The evidence shows that he was legally in the restaurant and that he did not refuse to leave. It is also questionable whether the order by the complainant was a "lawful order of the police to disperse”. The evidence, therefore, does not sustain this charge of disorderly conduct.
As to the charge of assault, there is nothing in the record to show that the defendant assaulted the complainant. The "nudge on the shoulder” alleged by the complainant does not constitute an assault and did not result in any physical injury to the complainant. The evidence, therefore, does not sustain the charge of assault in the third degree.
The remaining charge is violation of section 205.30 of the Penal Law (resisting arrest). Such a violation requires that the peace officer must be prevented "from effecting an authorized arrest”. Since the evidence shows that there was no proper basis for the charges of disorderly conduct and assault, which were the grounds upon which the complainant was arresting the defendant, there is no legal support for the charge of resisting arrest. Section 35.27 of the Penal Law, which prohibits the use of physical force to resist an arrest, whether authorized or unauthorized, does not expand the substantive scope of the section charging resisting arrest. (People v Stevenson, 31 NY2d 108; People v Barton, 30 AD2d 726; People v Lyke, 72 Misc 2d 1046; People v Ailey, 76 Misc 2d 589.)
The incident which resulted in the defendant’s arrest arose from circumstances which have become increasingly widespread in the past several months. That circumstance is the employment of a city police officer as a private security guard.
The police claim that they are on duty 24 hours a day. If so, then it would appear that there is a conflict between his employment for private security purposes, and his duties as a public employee. The situation is one fraught with peril to the public, to the city and to the policeman. At what point does he become a public employee enforcing his official public responsibility, as against his duty as a private employee?
The situation is further complicated by the outer dress and insignia that such a police officer may wear while he is acting as a private security officer. Should he wear at such times a shield, or his uniform, or his cap, or his collar insignia? And, if so, is it proper to do so while in private employment? In the case at bar, the officer admitted that he not only had on his *598 blue shirt and collar insignia but that he was also wearing a weapon.
Yet, if he does not wear any identification as a police officer, at what point does he act as a member of the Utica Police Department? A police officer is endowed with special powers and protections which a private security guard does not have. (CPL art 140 — arrest without a warrant.)
A police officer may arrest a person for any offense when he has reasonable grounds to believe that such person has committed such offense in his presence. (CPL 140.10.)
On the other hand, a private arrest is invalid unless the person arrested has in fact committed the crime for which the arrest was made. (Jacques v Sears, Roebuck & Co., 30 NY2d 466, 474; CPL 140.30.)
Was the arrest in the case at bar made by the complainant as a police officer or as a private security guard, i.e., a private citizen? If a false arrest is made, is the city responsible as the employer of the police officer? Or is the private employer responsible?
The private employer is no doubt pleased to be able to hire a police officer as his own private security guard. He gains all the additional advantages of having his own private police force. As a private guard, the officer is obviously under the directions of the private employer. When the manager of the Burger King Restaurant was asked what the duties of the guard were, he said that it was his job to see that the booths were occupied for only 20 minutes and to ask patrons to leave after that time. When the court asked him what happens if the patrons do not leave, he said then the officer is supposed to arrest the patron. He was not sure what, the charge would be, but as far as he was concerned the police officer, in his official capacity, could make the arrest for the benefit of the private employer.
Since the arrest of a citizen is a serious matter, no matter how trivial the charge, the question is fairly raised as to whether it is proper for a police officer, who is supposed to be on duty 24 hours a day, to be engaged in private security employment. The problem is one which calls for re-examination and reassessment by the authorities.
The charges against the defendant are dismissed, the defendant is discharged and the bail is released.