OPINION OF THE COURT
Seymour Rotker, J.
This case is before this court for a decision after a hearing on a motion to suppress. Due to the unique remedy sought and the court’s decision to grant a hearing with respect thereto, the decision granting the hearing is presented with the decision after the hearing, so that the matter may be viewed in its entirety.
The defendant was arrested on September 14, 1979, on 35th Street near Astoria Boulevard, Queens, New York, and charged with violations of section 240.25 of the Penal *369 Law, harassment, and section 205.30 of the Penal Law, resisting arrest.
The defendant moved to dismiss the complaint on the grounds that there was no probable cause or articulable suspicion to stop, detain, or make inquiries of the defendant in the first instance, thus contending that any subsequent actions by the police were in violation of the defendant’s statutory and constitutional rights. (US Const, 4th Arndt; CPL 140.10, 140.50.) This motion is in the nature of a demand for the suppression of an illegal arrest.
The misdemeanor complaint avers, “deponent states that at the above time and location, County of Queens, the defendant did push the deponent when deponent asked the defendant for identification and refused to produce identification.”
The defendant in support of his motion alleged that he was operating his automobile on 35th Street in Oueens County, at approximately 10:30 p.m. on September 14, 1979. Another vehicle was standing in the roadway perpendicular to oncoming traffic, thus tying up street traffic. After a short time, the defendant tried to ascertain why the vehicle was blocking traffic. He exited from his car and approached two men who had emerged from the unmarked vehicle and demanded identification from the defendant. The defendant refused to identify himself and was subsequently arrested for harassment and resisting arrest.
The People contend that “the incident between the police and the defendant in the instant matter was precipitated by the sudden stopping of the defendant’s vehicle driven at an excessive rate of speed. After the police approached defendant, who had already exited from his vehicle, the defendant refused to produce identification to the police who had identified themselves as such police officers.”
The primary questions before this court are whether the defendant is entitled to a pretrial review of his claim that he was arrested without probable cause in violation of his Fourth Amendment and statutory rights, and whether there is a procedural mechanism through which such a reveiw is possible.
*370 Since the defendant, by his motion to dismiss, is in effect seeking a suppression or quashing of his arrest, he is necessitating a pretrial examination of the existence of reasonable cause for arrest.
Under normal circumstances, a defendant moving to suppress physical evidence obtained by unlawful search and seizure (CPL 710.20, subd 1), testimony regarding statements involuntarily made to a public servant (CPL 710.20, subd 3), testimony recorded by improper eavesdropping (CPL 710.20, subd 2) or -improper identification testimony (CPL 710.20, subd 5), may do so before trial, in writing, and on reasonable notice to the People (CPL 710.60). The court must conduct a hearing if the facts are in dispute (CPL 710.60, subd 4), and in so doing must set forth its findings of fact and conclusions of law (CPL 710.60, subd 6).
In each evidentiary hearing on the above motions to suppress, a determination of probable cause for the predicate arrest may be required. (See Brown v Illinois, 422 US 590; Dunaway v New York, 442 US 200; Delaware v Prouse, 440 US 648; People v Martinez, 37 NY 2d 662.) In the case at bar, however, we have only the issue of probable cause raised, insofar as no physical evidence, statements, eavesdropping, evidence, or identification testimony is involved. Yet, we have a defendant claiming to be aggrieved by a violation of his Fourth Amendment rights. But for the existence of an additional piece of evidence potentially subject to suppression, the defendant would get a pretrial determination on the probable cause for arrest. Yet, because of the present state of statutory law in New York, the defendant might be left without a remedy pretrial, since the reasonable cause hearing for misdemeanors is no more.
The People contend that the repeal of GPL 170.75[1], which allowed the defendant in a New York City Criminal Court a preliminary hearing on a misdemeanor on the question of reasonable cause for the arrest of the defendant, precludes this court from proceeding further with de *371 fendant’s application in advance of trial. However, where a question of fact is raised on the issue of reasonable cause, the only way the matter could be resolved would be through an evidentiary hearing.
It should be noted that there is a qualitative difference between the permissible proof available for determining “reasonable cause to believe defendant committed a misdemeanor” under the now defunct preliminary misdemeanor hearing and that available for determining the degree of reasonable cause required to establish a valid basis for an arrest in a suppression hearing on that arrest’s constitutionality. Former CPL 170.74 (subd 2) provided that the hearing must be conducted in the manner prescribed in CPL 180.60 (subd 8), that is utilizing only “non-hearsay evidence” admissible to demonstrate reasonable cause to believe defendant committed a crime. (The exceptions to the use of hearsay evidence are specifically spelled out in the statute and are not pertinent here.) By contrast CPL 70.10 (subd 2) allows introduction of hearsay evidence to establish reasonable cause by the standards of CPL 140.10, which authorizes a police officer to arrest a person for any offense for which he has reasonable cause to believe such person committed in his presence. Thus there is a distinction between the type of proof required pursuant to the provisions of CPL 180.60 and that type of proof allowable at a suppression hearing on the issue of reasonable cause. The Legislature had an opportunity to effect changes in the rule concerning hearsay requirements and did so for expert reports etc., but retained the requirements of non-hearsay evidence for preliminary hearing purposes.[2] Accordingly this court utilizing CPL 180.60 does not deem that any hearing it may order would be usurping the legislative prerogatives allowing a suppression hearing notwithstanding the repeal of CPL 170.75.
The defendant has raised a constitutional issue of which the court should take cognizance at this stage of the proceedings.
Since Mapp v Ohio (367 US 643) made principles of constitutional law applicable to the States concerning the *372 seizure of tangible property, the law has evolved to apply Fourth Amendment principles to the seizure of persons including seizures that involve only a brief detention, short of traditional arrest (e.g., stop and frisk [Davis v Mississippi, 394 US 721]). “[W]henever a police officer accosts an individual and restrains his freedom.to walk away, he has ‘seized’ that person” (Brown v Texas, 443 US 47, 50, quoting from Terry v Ohio, 392 US 1, 17). “Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.” (Brown v Texas, supra, at pp 50-51; Delaware v Prouse, 44 US 648.) The Supreme Court in the Brown case continued (p 51) “[a] central concern in balancing these competing considerations in a variety of settings has been to assure that an individual’s reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field.” In that case, the Supreme Court declared unconstitutional a Texas statute making it a crime for a person to intentionally refuse to report his name and address to a police officer after being lawfully stopped by said officer. Defendant refused to identify himself after haying been observed walking away from an alley in an area with a high incidence of drug traffic. There were no objective facts articulated by the police upon which they would have had a reasonable suspicion that defendent was involved in criminal activity.[3]
The case, however, serves to highlight the available constitutional guarantees and the right of the defendant to his *373 privacy. It raises the issue of whether such constitutional right may be tested in a pretrial motion absent the usual concomitant suppression motion being made or available to defendant in tandem with the challenge to the arrest.
Prior to codification (CPL article 710 [relating to suppression of evidence]) an alleged violation of constitutional rights was subject to'pretrial hearings by case law (cf. People v Huntley, 43 NY2d 175). The granting of the suppression motion invariably, with few exceptions, resulted in vitiating the necessity for trial which would have produced the same result only after a greater time expenditure. It seems that the same justification, along with the public policy encouraging judicial economy militates in favor of a pretrial hearing which would provide a speedier determination with relation to an illegal stop and/or detention (cf. Brown v Texas, 443 US 47, supra).
A motion to dismiss an information on constitutional grounds should be addressed to the court before trial. (People v Goodman, 31 NY2d 262.) Goodman involved a claim of discriminatory enforcement of the law. Though the facts differ from the case at bar, the issue as to the procedural mechanism through which the claim of a violation of defendant’s constitutional rights, the rationale behind the decision, and the manner in which the remedy may be effectuated, is clearly applicable. The Court of Appeals in its unanimous decision stated (pp 268-269):
“The claim of discriminatory enforcement should not be considered as an affirmative defense to the criminal charge, to be determined together with the issue of guilt by the trier of fact, but, rather, should be addressed to the court before trial as a motion to dismiss the prosecution upon constitutional grounds.
“A claim of discriminatory enforcement does not reach the issue of the guilt or innocence of the defendant and, therefore, is not peculiarly within the province of the trier of fact. It goes, rather, to the more basic threshold question whether the court, as an agency of government, should lend itself to a prosecution which discriminates against the defendant by singling him out for prosecution because of personal animosity, nonconformity, unpopularity, or some *374 other illegitimate reason offensive to our notions of fair play and equal treatment under the law. This question, like a motion to suppress illegally seized evidence,- reaches the very integrity of the judicial and law enforcement processes, and in the interest of judicial economy and the avoidance of delay or confusion at trial, should be addressed to the court by a pretrial motion to dismiss the information or indictment in accordance with article 170 or article 210 of the Criminal Procedure Law*” (Emphasis added.)
CPL 170.30 (subd 1, par [f]) provides that a defendant may move to dismiss a misdemeanor complaint where “[t]here exists some other jurisdictional or legal impediment to conviction of the defendant for the offense charged”. Certainly the court as a matter of law would have to rule on the lawfulness of defendant’s arrest during a trial of the issues. If the court found the defendant’s arrest was effected without probable cause (or at least articulable suspicion, Brown v Texas, 443 US 47, supra; People v Cantor, 36 NY2d 106, supra), a motion to dismiss would be granted at the end of the People’s case. Such a result would certainly be an impediment to conviction. (CPL 170.30, subd 1, par [f].) The procedure to be followed in a motion to dismiss a misdemeanor complaint is delineated in CPL 210.45. Subdivisions 6 and 7 thereof mandate the court to conduct a hearing and make findings of fact essential to a determination of the motion. The defendant has the burden of proving by a preponderance of the evidence every fact essential to support the motion.
This court found that the defendant raised a Fourth Amendment issue that must be dealt with pretrial as a matter of law. Accordingly, this court directed a hearing be held in accordance with the opinion aforesaid.
On the 6th day of December, 1979, a hearing was held before the court. The following constitutes the opinion, decision and order of this court following the hearing.
*375 Detective Nicholas Tarzia, of the 114th Precinct Anti-Crime Unit of the New York City Police Department, and Henry Kingsley, a passenger in the vehicle operated by defendant testified.
FINDINGS OF FACT
On September 14, 1979 at 10:15 p.m., Officer Tarzia was operating his unmarked police vehicle north "on 35th Street (a one-way street) near Astoria Boulevard, Queens, New York. He attempted to make a left turn into a driveway adjacent to the 114th Precinct but was not able to accomplish the turn. While attempting to maneuver the vehicle into the driveway, the officer stopped it perpendicular to oncoming traffic where it remained for some period of time. The defendant operating his vehicle behind the officer’s car stopped and waited for the police car to proceed. When the police vehicle did not move, the defendant honked his horn. Officer Tarzia and his partner, both in plain clothes, exited from their vehicle, the defendant exited from his, and a verbal altercation ensued. Officer Tarzia requested the defendant to identify himself by producing his license and registration. The defendant refused to do so and endeavored to get back into his vehicle by pushing past the officer. He was restrained from doing so and was arrested for harassment and resisting arrest. Though Detective Tarzia testified that the defendant operated his automobile at an excessive rate of speed immediately before the arrest, he did not observe the vehicle speeding but just heard a screeching of brakes. The officer further alleged that the defendant’s breath smelled from alcohol. The record reflects, however, that the defendant was not given a summons for speeding nor charged with any other Vehicle and Traffice Law violation.
CONCLUSIONS OF LAW
I. BURDEN OF proof — Because of the nature of the motion in this case, i.e., “to suppress an arrest”, this court deems it appropriate at the outset to comment on the burden of proof requirements since this not a typical motion to suppress.
*376 It is the accused, not the People, who must shoulder the burden of proof on a motion to suppress evidence. The People have only the burden of going forward to assert the legality of the police conduct in the first instance. (People v Di Stefano, 38 NY2d 640, 652.)[4]
In the case at bar, we are dealing with the seizure of defendant’s person and thus the same standard applicable to other Fourth Amendment matters are pertinent here. To sustain their burden the People must show that the defendant was lawfully detained. The defendant must establish the illegality of the police conduct if he is to prevail. The quantum of proof required by the defendant is proof by a preponderance of evidence of every essential element to support the motion (CPL 210.45, subd 7; People v Goodman, 31 NY2d 262, supra).
II. LEGALITY OF ARREST.
A police officer has no greater right than any citizen to detain a person for the purpose of requiring him to produce identification. He may only do so if he has reasonable suspicion to believe that the person detained has, is, or is about to commit a crime or other violation of law. (CPL 140.50.) A citizen has no duty to respond to any officer’s inquiry and is not chargeable for his failure to so respond. (Brown v Texas, 443 US 47, supra; People v Howard, 50 NY2d 583.) Certainly an inquiry by an officer without at least a reasonable suspicion, based upon articulable facts that the person so detained is committing, or about to commit a crime violates his Fourth Amendment rights (Brown v Texas, supra). In the case at bar, this court finds that the arresting officer had no articulable basis to request the defendant to identify himself. There was no showing of a crime or other violation of law to establish the officer’s right to detain defendant for purposes of inquiry. The facts elicited during the course of the hearing do not substantiate the officer’s *377 testimony that the defendant had, in fact, violated any traffic law or regulation. The officer testified that he only heard a screeching of tires while he was endeavoring to make a turn into the driveway of a police precinct. The accusatory instrument itself, though not required to spell out all of the facts leading to the arrest, is bereft of any factual averment which would indicate a predicate for the officer’s request of the defendant to identify himself. In fact, the accusatory instrument states: “The defendant did push the deponent when the deponent asked the defendant for identification and refused to produce identification.” Furthermore, the officer issued no summons for any alleged violation by the defendant of the Vehicle and Traffic Law.[5]
In the case at bar, based upon all of the testimony, there was an apparent exacerbation of the situation when the defendant honked his horn while the police officer’s vehicle was blocking traffic. Words led to more words and then to action by the police in effecting the arrest of the defendant. The failure of the People on these facts to show that the police met the minimum standard of showing an articulable suspicion based upon objective facts that unlawful activity is afoot is fatal to this case. (People v De Bour, 40 NY2d 210; People v Howard, 50 NY2d 583, supra.)
I find the officer’s hearing testimony concerning the defendant’s alleged “speeding” to be a patent endeavor to alter the circumstances to justify the action which took place. There was no valid basis for the initial action of the police in demanding identification. (People v Ingle, 36 NY2d 413; Pennsylvania v Mimms, 434 US 106.) The de *378 fendant had the right to refuse to answer and to seek to re-enter his vehicle. The “force” he used, that is, by pushing by the officer was well within the limits allowed by the law. Section 35.27 of the Penal Law, limiting the right of the defendant to use force where an arrest is unlawful, is not a complete bar to the right of a defendant to the use of some necessary force. (People v Sanza, 37 AD2d 632.) The purpose of that section is merely to prevent street combat as a means of determining the validity of an arrest. “[A] citizen may use reasonable force in self-defense where the force exerted by the police in effecting an arrest is excessive.” (People v Stevenson, 31 NY2d 108, 112.) It is this court’s opinion that the so-called “pushing” of the officer by the defendant in trying to regain entry to his vehicle was lawful conduct by the defendant who was being unlawfully detained, and is beyond the purview of section 35.27 of the Penal Law. This is especially true since there is no charge before the court for any activity of the defendant preceding the alleged “pushing”.
That is not to say that any type of unlawful police action will permit defendant to act in vindication of his rights in a primitive fashion. There are circumstances which occur where the action of the defendant is so free and independent of an unlawful detention by a police office as to render any connection between the lawless conduct of the police and the discovery of the challenged evidence so attenuated as to diminish the taint. (Wong Sun v United States, 371 US 471; People v Townes, 41 NY2d 97; People v Boodle, 47 NY2d 398.)
The defendant’s lawful attempt to re-enter his vehicle was blocked by the arresting officer. (Again, this is the oft-encountered situation of the officer attempting to vindicate a perceived affront to his dignity.) Though he was on active duty, the officer was not actually performing an investigation or other similar police function and his action here was not justifiable. As such, the defendant’s attempt to defend himself in order to extricate himself from a potentially combative situation was justified. Accordingly, the arrest of the defendant for harassment is suppressed, and the charge of resisting arrest is dismissed since the arrest of the *379 defendant was not “authorized” pursuant to section 205.30 of the Penal Law, insofar as it was without probable cause. (People v Lyke, 72 Miscv 2d 1046; People v Alley, 76 Misc 2d 589.)

. L 1978, eh 481, § 10, eff Sept. 1, 1978.

. CPL 180.60, subd 8 (L 1975, ch 307, § 1, eff June 24, 1975).

. Though it is claimed by the defendant that the doctrine set forth by Brown v Texas (supra) should vitiate the arrest in this case, as aptly set forth by my colleague, Judge Herbert Altman in the case of People v Thomas (NYLJ, Sept. 20, 1979, p 13, col 2), that case affords the defendant no greater constitutional protection from arbitrary seizure of his person than he would otherwise have received in New York under CPL 140.50 (subd 1): “Temporary questioning of persons in public places; search for weapons. 1. In addition to the authority provided by this article for making an arrest without a warrant, a police officer may stop a person in a public place located within the geographical area of such officer’s employment when he reasonably suspects that such person is committing, has committed or is about to commit either (a) a felony or (b) a misdemeanor defined in the penal law, and may demand of him his name, address and an explanation of his conduct.”

 [Footnote to Goodman opinion]: “See subdivision 1 (par. [h]) of section 210.20 of the Criminal Procedure Law which contains a dragnet provision authorizing a motion to dismiss an indictment on the basis of any other jurisdictional or legal impediment to conviction not mentioned in the other paragraphs. Subdivision 1 (par. [f]) of section 170.30 of the Criminal Procedure Law contains a similar provision for a motion to dismiss an information.”

. Though a defendant who challenges the legality of a search and seizure has the burden of proof of the illegality of such action, the People are, nevertheless, put to the burden of going forward to show the legality of the police conduct in the first instance and must show that a search was made pursuant to a valid warrant. (People v Berrios, 28 NY2d 861.)

. It behooves the court at this time to comment on matters dehors the record concerning the experiences of this court in dealing with matters similar to the ones at bar. Frequently police officers, by virtue of their position, feel that they have rights superior to the average citizen. This is especially true when the officer is endeavoring to vindicate what may be characterized as an alleged “private right”, i.e., where the officer is. utilizing his official capacity in order to obtain leverage against a citizen, where ihe officer was not engaged in the performance of his regularly assigned police duties. All too often, the use of “muscle” by the police officer only exacerbates a situation which never should have developed. As between the officer and citizen both are in the same legal position vis-a-vis each other. Neither has the right to demand an answer to a question asked. Only where a reasonable suspicion of criminal activity exists, can an officer assert his official right of inquiry.