OPINION OF THE COURT
Raymond E. Cornelius, J.
The petition alleges that the respondent is a juvenile delinquent based upon acts, which, if committed by an adult, would constitute crimes in violation of section 195.05 (obstructing governmental administration), section 205.30 (resisting arrest), and subdivision 1 of section 120.00 (assault, third degree) of the Penal Law. The facts of the case present another facet of the problem created by application of the statute, defining the crime of obstructing *377 governmental administration, to interference with the police function of arrest.
Police Officer Michael A. Prince, who is employed by the Rochester Police Department, testified that the respondent was one of approximately eight youths, engaged in a fight, in the parking lot of a public school, which was located across the street from her home. The officer did not observe the respondent strike anyone or possess any kind of weapon, and, indeed, could not name or identify anyone with whom she was engaged in a fight. The respondent was not placed under arrest for any offense involving the fight, but rather, for obstructing governmental administration because she was allegedly interfering with other arrests. On cross-examination, Officer Prince initially stated that at least one other person had been arrested and placed in a police vehicle before the respondent had been arrested, but then admitted that respondent was the first person placed in the car. Also, there was no testimony by the police officer, which would indicate that the claimed interference with arrests was physical in nature, or consisted of any form of intimidation.
The respondent, on the other hand, contended that, although present in the parking lot before arrival of the police, she had been requested by a boyfriend to locate her sister, who also lived across the street, for the purpose of asking the sister to move his automobile. It is apparent that the boyfriend apprehended difficulty upon arrival of the police, and there is no disagreement with the fact that the youths were trespassing on school property and had received warnings from the police in the past. After returning from across the street, with her sister, the respondent maintained that she was approached by Officer Prince and placed under arrest. This version of the events was corroborated by several witnesses called on her behalf, including a school custodian, who was a disinterested witness.
After the respondent was placed in the police vehicle, she exited therefrom, and, according to Officer Prince, pushed and shoved at him and stated that she was not going to be arrested. Ultimately, she ran to and embraced her mother, who had emerged from the family residence and crossed the street. At this point, there was much discrepancy in the *378 testimony, as to what actually occurred. Lieutenant Gordon Vigilante, who had arrived at the scene, and, according to his account, was talking with the mother and holding the respondent by the back of the left arm, testified that the respondent struck him in the face, causing his nose to bleed. This was confirmed by Officer Prince and Officer D’Angelo, another police officer who had responded, although the latter testified that Lieutenant Vigilante was not holding the respondent when the blow was struck. Other witnesses testified that they observed an arm come up and/or a police officer’s hat “fly” off. The respondent, and several witnesses called on her behalf, testified that Officer Prince pulled on her hair while in her mother’s embrace, and this caused her hands and arms to reach over her head. There was also movement on the part of the hands of respondent’s mother, but respondent admitted that she may have accidentally struck Lieutenant Vigilante as she reacted to her hair being pulled. In any event, the respondent was forcibly removed and placed back in the police vehicle, and eventually transported from the scene.
The crime of obstructing governmental administration is committed “by means of intimidation, physical force or interference, or by means of any independently unlawful act.” (Penal Law, § 195.05.) Although this statute, insofar as it is based upon obstruction by “interference”, has been applied to the exercise of official police functions, it is apparent from the clear language thereof, as well as case law, that the claimed interference must be accompanied by some physical act. (See, e.g., People v Lopez, 97 Misc 2d 124; People v Ketter, 76 Misc 2d 698.) For example, encirclement of a police officer, who has just attempted to effectuate the arrest of one of a number of friends, has been held to possibly constitute the kind of physical interference contemplated by the statute. (People v Shea, 68 Misc 2d 271.) Conversely, words alone, which may nevertheless obstruct the police function, have been held to be insufficient. (People v Lopez, supra; People v Ketter, supra.) As already noted, in this case, there was no evidence presented which would indicate that the respondent physically interfered with the arrests, or engaged in any act of *379 intimidation, in connection with the arrests of others prior to the time she was placed under arrest for obstructing governmental administration.
The only remaining question is whether she committed the crime by the other means set forth in the statute, to wit, by an independent unlawful act. For several reasons, the court has concluded that the petitioner has failed to establish that the respondent committed such an act, and thus, the petition, insofar as it is based upon section 195.05 of the Penal Law, cannot be sustained.
First, it is apparent that the official police function alleged to have been obstructed was the arrest of other youths, who were present on the school premises. Section 205.30 of the Penal Law, in pertinent part, provided that a person is guilty of the crime of resisting arrest when “he intentionally * * * attempts to prevent a peace officer from effecting an authorized arrest of *** another person”. It might be contended that this constitutes the unlawful act by which the respondent obstructed the police, but the problem is the fact that it Would not be an independent act. In other words, the very function allegedly obstructed was the function of arrest, and as applied to the facts of this case and many other cases which have occurred in this State, there is no difference between the two crimes. A person could just as well be charged with resisting arrest, but, for some reason, the police seem to prefer the crime of obstructing governmental administration, which is much more ambiguous in its language. Indeed, the statutes defining both crimes were derived, in part, from former section 1825 of the Penal Law, resisting officer. (See Historical Notes and Hechtman’s Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, §§ 195.05, 205.30, pp 395, 449.) This court holds that resistance to a police arrest, unaccompanied by intimidation, physical force or some other physical act, does not support a charge of obstructing governmental administration because it does not constitute an “independently unlawful act”, as required by the other branch of the statute. Any contrary holding would, in effect, mean that a person could be charged with, and convicted, of resisting arrest, an official police function, by means of resisting arrest. This *380 would be an anomalous result, which the court believes would not have been intended by the Legislature.
Secondly, assuming that resisting arrest were an independent act, there was no evidence, in this case, that it was an “unlawful” act, as required by the statute. Except for the general assertion that the respondent interfered with arrests, there was an absence of articulated facts which would establish the manner by which the respondent resisted the arrests of others, and, most important, the fact that these arrests were based upon probable cause, and therefore, lawful. (People v Ailey, 76 Misc 2d 589.)
 The determination that the charge of obstructing governmental administration cannot be legally and factually sustained requires that the petition, insofar as it is based upon that charge, and also the charge of resisting arrest, be dismissed. Section 205.30 of the Penal Law, which, in this case, was sought to be invoked as to events occurring after the respondent exited from the police vehicle, requires that the underlying arrest be lawful. (People v Stevenson, 31 NY2d 108.) An arrest for conduct which does not legally constitute an offense does not constitute an authorized arrest. (People v Stephens, 100 Misc 2d 267; People v Lopez, supra.) Similarly, an arrest, without a warrant, and not authorized by the Criminal Procedure Law, because, for example, the police lacked probable cause to believe that a misdemeanor had been committed in their presence is unlawful. (People v Williams, 25 NY2d 86; Budgar v State of New York, 98 Misc 2d 588; People v Lyke, 72 Misc 2d 1046.) In this regard, it should be remembered that authorization to arrest juveniles, without a warrant, is expressly governed by CPL article 140. (Family Ct Act, § 721.)
Finally, the court entertains a reasonable doubt as to the charge of assault in the third degree, and therefore, dismisses the petition in its entirety. Specifically, the court has a reasonable doubt as to whether or not the respondent intended to cause physical injury to Lieutenant Vigilante, which would be an essential element in order to establish a violation of subdivision 1 of section 120.00 of the Penal Law.
*381 It should be emphasized that the petition did not charge a violation of subdivision 3 of section 120.05 of the Penal Law which proscribes conduct which causes physical injury to a police officer with intent to prevent the performance of a lawful duty, but does not require an intent to cause physical injury. Assuming that Lieutenant Vigilante did sustain physical injury as the result of respondent attempting to prevent her arrest and/or removal from her mother’s embrace, the outcome might be otherwise because of section 35.27 of the Penal Law. Although inapplicable to the crime of resisting arrest, that section precludes the use of any physical force to resist an authorized or unauthorized arrest insofar as it may relate to a charge of assault. (People v Harewood, 63 AD2d 876; People v Maksymenko, 105 Misc 2d 368; People v Giorgetti, 103 Misc 2d 118; People v Lyke, supra.)
There were a number of other issues raised during the course of the fact-finding hearing, such as the manner in which the respondent’s sister, who had a leg cast, was arrested, or the manner in which respondent’s mother was taken into custody, dressed only in nightwear, and subsequently searched at the police station. In addition, there were allegations that another sister, who was pregnant and gave birth to a child later that night, was struck by the police. A photograph was taken of the respondent and introduced into evidence which revealed blood on her face, which could not be explained by the police. The technician, who took the photograph, testified that he took photographs of everyone arrested, but when directed by the court to produce them, was unable to do so and changed his testimony. However, the above findings and conclusions make it unnecessary to resolve these issues.